## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

(1) MUSCOGEE (CREEK) NATION, a federally recognized Indian tribe,

    *Plaintiff*,

v.

(1) CAROL ISKI, in her official capacity as District Attorney for the Twenty-Fifth Prosecutorial District of Oklahoma,

    *Defendant*.

Case No. 25-CV-28-GLJ

## COMPLAINT

Plaintiff the Muscogee (Creek) Nation ("Nation"), a federally recognized tribal government, by and through counsel, states as follows:

## INTRODUCTION

1. In *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the United States Supreme Court affirmed that in a series of treaties between the 1830s and the 1860s, Congress established a federally protected reservation for the Nation. *Id*. at 899–902. It further affirmed that Congress has never disestablished the Creek Reservation and that, accordingly, the Reservation today remains Indian country under 18 U.S.C. § 1151(a). *Id*. at 902–13.

2. Within Indian country (which includes federal Indian reservations), criminal jurisdiction over Indians is shared between the federal government and tribal governments, exclusive of state jurisdiction. "The policy of leaving Indians free from state jurisdiction and control is deeply rooted in this Nation's history." *Id*. at 928 (citation omitted). Accordingly, neither states nor their political subdivisions may exercise criminal jurisdiction over Indians within Indian country absent "a clear expression of the intention of Congress" to authorize such jurisdiction. *Id*. at 929 (citation omitted); *see also, e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) ("[U]nless Congress provides an exception to the rule[,] … states possess 'no authority' to prosecute Indians for offenses in Indian country." (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980))).

3. In *McGirt*, the Supreme Court confirmed that "Oklahoma cannot come close to satisfying this standard," because Congress has never granted it jurisdiction to prosecute Indians for conduct arising in Indian country. 591 U.S. at 929.

4. That holding applies equally to the State's county governments, because the only criminal powers that counties possess necessarily derive from Oklahoma. *See Large v. Fremont Cnty.*, 670 F.3d 1133, 1146 (10th Cir. 2012) ("[C]ounties are created by the State as convenient agencies for exercising such of the governmental powers *of the state* as may be entrusted to them." (quotation marks and citation omitted)); *Herndon v. Anderson*, 25 P.2d 326, 329 (Okla. 1933) (a county "has no inherent powers but derives [its] powers solely from the state").

5. *McGirt* therefore put the District Attorney on clear notice that the county governments that she represents lack criminal jurisdiction over Indians within the exterior boundaries of the Creek Reservation, which encompasses the vast majority of her jurisdiction, and that prosecuting Indians under color of such jurisdiction absent the assent of Congress violates federal law.

6. Nevertheless, the District Attorney has continued to prosecute Indians for conduct arising within the Creek Reservation after *McGirt*. She claims, despite a wealth of controlling precedent to the contrary, that the State of Oklahoma (and therefore its county governments) enjoys criminal jurisdiction over Indians within the Creek Reservation based on the reasoning of *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), a case addressing state jurisdiction over non-Indians in which the Court expressly and repeatedly disclaimed any intent to address the question of state jurisdiction over Indians.

7. The District Attorney's prosecution of Indians for conduct occurring within the Creek Reservation constitutes an ongoing violation of federal law and irreparably harms the Nation's sovereignty by subjecting Indians within the Creek Reservation to laws and a criminal justice system other than the laws and system maintained by the Nation. Doing so impermissibly interferes with the Nation's federally protected rights of self-government.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. The Nation maintains a government-to-government relationship with the United States and has a governing body duly recognized by the United States Department of the Interior. The Nation asserts claims arising under the principles of federal Indian law governing federal, tribal, and state authority within Indian country.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and the District Attorney principally discharges her official duties in this District.

## PLAINTIFF

10. Plaintiff the Muscogee (Creek) Nation is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 99,899-01, 99,901 (Dec. 11, 2024). The Nation exercises sovereign powers of self-governance and jurisdiction over the Creek Reservation, which was guaranteed to the Nation and defined by Congress in the Treaty with the Creeks, 7 Stat. 366 (1832); Treaty with the Creeks, 7 Stat. 417 (1833); Treaty with the Creeks and Seminole, 11 Stat. 699 (1856); and Treaty with the Creeks, 14 Stat. 785 (1866). *See McGirt*, 591 U.S. at 899–902.

11. The Nation, through its Attorney General, Lighthorse police, tribal court system, and comprehensive criminal code, provides for criminal law enforcement "over all Indians alleged to have committed in Muscogee (Creek) Nation Indian Country a criminal offense enumerated and defined by any law or statute of the Muscogee (Creek) Nation insofar as not

3

prohibited by federal law." MCN Code tit. 27, § 1-102(C).[1] To ensure coordinated law enforcement and public safety, the Nation has incorporated into its criminal code "any criminal offense prescribed by" other governments within the Nation's Reservation boundaries, including McIntosh and Rogers Counties. NCA 22-048 (codified at MCN Code tit. 14, § 2-114(B)).[2] Likewise, the Nation revised its traffic code in 2020 to mirror Oklahoma's traffic code (both of which include criminal provisions). NCA 20-087 (codified at MCN Code. tit. 14, ch. 3).[3]

## DEFENDANT

12. Defendant Carol Iski is the District Attorney for the Twenty-Fifth Prosecutorial District of Oklahoma and is sued in her official capacity. The Twenty-Fifth District encompasses Okmulgee and McIntosh Counties. Okmulgee County is located entirely within the exterior boundaries of the Nation's Reservation, and approximately 84% of McIntosh County is within the exterior boundaries of the Nation's Reservation.

13. Defendant is herein referred to as "the District Attorney."

## STANDING

14. The District Attorney's ongoing criminal prosecutions of Indians for conduct within the Creek Reservation are causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation. *See Ute Indian Tribe*, 790 F.3d at 1005–06 (stating that there is "just no room to debate" that state and county prosecution of an Indian within a tribe's Indian country absent the assent of Congress is an

---

[1] https://bit.ly/42tVIry.
[2] https://bit.ly/40NwUtn.
[3] https://bit.ly/3PTjhTd.

"infringement on tribal sovereignty" and an "irreparable injury" to the tribe); *cf. Castro-Huerta*, 597 U.S. at 650 ("the exercise of state jurisdiction here would not infringe on tribal self-government" because it "does not involve the exercise of state power over any Indian").

15.     The District Attorney has demonstrated by her ongoing prosecutions of Indian Defendants that, absent judicial intervention, she will persist with these unlawful prosecutions.

16.     This Court can redress the injury that the District Attorney is inflicting on the Nation and its right to self-government by issuing a declaratory judgment that the counties represented by the District Attorney lack criminal jurisdiction over Indians within the Creek Reservation absent the assent of Congress, and by enjoining the District Attorney from prosecuting Indians under color of such jurisdiction going forward.

### THE SUPREME COURT'S DECISION IN *McGIRT v. OKLAHOMA*

17.     In *McGirt*, the United States Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established and defined a federally protected Indian reservation for the Nation. 591 U.S. at 899–902. The Court further affirmed that, since 1866, Congress has never disestablished the Creek Reservation and that it remains Indian country today under 18 U.S.C. § 1151(a). *Id*. at 902–13.

18.     *McGirt*'s holding that the Creek Reservation is Indian country confirms that the settled jurisdictional rules that allocate state, tribal, and federal criminal jurisdiction within Indian country apply within the Creek Reservation. Among those rules is that "within Indian country, generally only the federal government or an Indian tribe may prosecute Indians for criminal offenses," and that "unless Congress provides an exception to the rule[,] … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe*, 790 F.3d at 1003–04 (Gorsuch, J.) (quotation marks omitted). *McGirt* concluded that "Oklahoma

cannot come close to" showing that Congress has ever authorized it to exercise criminal jurisdiction over Indians within reservation boundaries. 591 U.S. at 929.

19.     Because the counties that the District Attorney represents possess only those powers derived from the State of Oklahoma, the rule reiterated in *McGirt* and *Ute Indian Tribe* applies to them as it does to Oklahoma. *See Ute Indian Tribe*, 790 F.3d at 1006 (rule against state criminal jurisdiction over Indians in Indian country applies to "a state and its subdivisions").

**THE DISTRICT ATTORNEY'S CONTINUED CLAIM TO CRIMINAL JURISDICTION OVER INDIANS FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *McGIRT***

20.     Okmulgee County lies entirely within the exterior boundaries of the Creek Reservation.

21.     Approximately eighty-four percent of the land area of McIntosh County lies within the exterior boundaries of the Creek Reservation. The remaining approximately sixteen percent of the County is within the exterior boundaries of the Cherokee Nation.

22.     Since the Supreme Court's decision in *McGirt*, the District Attorney has continued to assert criminal jurisdiction over Indians for conduct occurring within the Creek Reservation. The Nation is aware of four cases in which the District Attorney has done so between May 2023 and October 2024.

23.     The District Attorney brought each of the four prosecutions in the district court of the 18th Judicial District for McIntosh County, Oklahoma. The cases are styled *Oklahoma v. Long*, No. CF-2023-00086 (filed May 30, 2023)[4]; *Oklahoma v. Medlock*, No. CF-2024-00050

---

[4] https://bit.ly/40xTmFx.

(filed Mar. 14, 2024)[5]; *Oklahoma v. Wiedel*, No. CF-2024-00105 (filed June 10, 2024)[6]; and *Oklahoma v. Carson*, No. CF-2024-00149 (filed Aug. 19, 2024).[7]

24.     In each case, the charged conduct occurred within the boundaries of the Creek Reservation.

25.     In each case, the Indian defendant challenged the prosecution based on the long-settled law reaffirmed in *McGirt* that states and their political subdivisions lack criminal jurisdiction over Indians in Indian country absent the assent of Congress.

26.     In each case, the District Attorney has nevertheless maintained that the prosecution is lawful based on the Supreme Court's decision in *Castro-Huerta*, which holds that states have inherent criminal jurisdiction over *non*-Indians in Indian country unless that jurisdiction is preempted by federal law or precluded by application of the balancing test set forth in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980).

27.     The District Attorney has taken the position that the *Castro-Huerta* analysis (including the resort to *Bracker* balancing) likewise governs state jurisdiction over Indians, despite the Supreme Court's repeated statements that the decision "express[es] no view on state jurisdiction over a criminal case of that kind" and does "not take a position on that question," 597 U.S. at 650 n.6, 655 n.9.

28.     Because *Castro-Huerta* states repeatedly that the decision carries no implications for questions of state jurisdiction over Indians and expressly confines its analysis to the issue of state jurisdiction over non-Indians, it does not alter longstanding Supreme Court and Tenth

---

[5] https://bit.ly/4gj0ewq.
[6] https://bit.ly/3WCOX30.
[7] https://bit.ly/4gewoZR.

Circuit precedents prohibiting state criminal prosecution of Indians for conduct within Indian country absent the assent of Congress. Those precedents remain binding.

29. The District Attorney accordingly lacks all authority to depart from the jurisdictional framework reaffirmed in *McGirt* and *Ute Indian Tribe* and to instead apply the *Bracker* balancing test under the purported authority of *Castro-Huerta* as a basis for prosecuting Indians for conduct within the Creek Reservation. Doing so is a flagrant violation of controlling federal law and inflicts irreparable harm on the Nation's sovereignty.

## COUNT 1

30. The Nation restates, realleges, and incorporates by reference all preceding paragraphs and allegations.

31. The Creek Reservation is Indian country under 18 U.S.C. § 1151(a).

32. Within its Reservation, the Creek Nation and the United States possess criminal jurisdiction over Indians exclusive of the State of Oklahoma and its political subdivisions, which are prohibited under federal law from asserting any such jurisdiction absent the assent of Congress. Congress has not authorized such jurisdiction here.

33. The majority of the Twenty-Fifth Prosecutorial District is located within the Nation's Reservation.

34. The District Attorney continues to assert criminal jurisdiction over Indians for conduct occurring within the Creek Reservation despite the lack of congressional authorization. The District Attorney's actions directly contravene federal law.

35. The District Attorney has demonstrated her intention to continue asserting criminal jurisdiction over Indians for conduct within the Creek Reservation absent judicial intervention.

**PRAYER FOR RELIEF**

WHEREFORE, the Nation respectfully requests that this Court:

A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that the counties represented by the District Attorney lack criminal jurisdiction over Indians for conduct occurring within the Creek Reservation and that the District Attorney's continued assertion of that jurisdiction violates federal law.

B. Preliminarily and permanently enjoin the District Attorney from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

C. Award the Nation its reasonable attorney fees and costs.

D. Award the Nation such other relief as the Court deems just and appropriate.

Dated: January 28, 2025  Respectfully submitted,

/s/Riyaz A. Kanji

| | |
|---|---|
| Geraldine Wisner, OBA No. 20128 | Riyaz A. Kanji |
| Attorney General | David A. Giampetroni |
| MUSCOGEE (CREEK) NATION | KANJI & KATZEN, P.L.L.C. |
| P.O. Box 580 | P.O. Box 3971 |
| Okmulgee, OK 74447 | Ann Arbor, MI 48106 |
| (918) 295-9720 | (734) 769-5400 |
| gwisner@mcnag.com | rkanji@kanjikatzen.com |
| | dgiampetroni@kanjikatzen.com |
| O. Joseph Williams, OBA No. 19256 | |
| O. JOSEPH WILLIAMS LAW OFFICE, PLLC | Philip H. Tinker |
| The McCulloch Building | Stephanie R. Rush, OBA No. 34017 |
| 114 N. Grand Avenue, Suite 520 | KANJI & KATZEN, P.L.L.C. |
| P.O. Box 1131 | 12 N. Cheyenne Avenue, Suite 220 |
| Okmulgee, OK 74447 | Tulsa, OK 74103 |
| (918) 752-0020 | (206) 344-8100 |
| jwilliams@williamslaw-pllc.com | ptinker@kanjikatzen.com |
| | vrush@kanjikatzen.com |

*Counsel for Muscogee (Creek) Nation*

## CERTIFICATE OF SERVICE

      I certify that on January 28, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                                                  /s/ *Riyaz A. Kanji*
                                                  Riyaz A. Kanji